Representing Management Exclusively in Workplace Law and Related Litigation

**jackson|lewis**

Attorneys at Law

Jackson Lewis LLP
58 South Service Road
Suite 410
Melville, New York 11747
Tel 631 247-0404
Fax 631 247-0417
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | DETROIT, MI | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| ALBUQUERQUE, NM | GREENVILLE, SC | MORRISTOWN, NJ | PROVIDENCE, RI |
| ATLANTA, GA | HARTFORD, CT | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | RICHMOND, VA |
| BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SACRAMENTO, CA |
| BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAINT LOUIS, MO |
| BOSTON, MA | LAS VEGAS, NV | ORANGE COUNTY, CA | SAN DIEGO, CA |
| CHICAGO, IL | LONG ISLAND, NY | ORLANDO, FL | SAN FRANCISCO, CA |
| CINCINNATI, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PHOENIX, AZ | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PITTSBURGH, PA | WASHINGTON, DC REGION |
| DENVER, CO | MILWAUKEE, WI | PORTLAND, OR | WHITE PLAINS, NY |

DIRECT DIAL: (631) 247-4605
EMAIL ADDRESS: SIEGELP@JACKSONLEWIS.COM

November 20, 2012

**VIA ECF**

Hon. A. Kathleen Tomlinson
U.S. Magistrate Judge
U.S. District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-4438

Re: *Raul Moreno v. Nassau Country Club and
Jim Coffey*; 12-CV-5324 (DRH)(AKT)

Dear Magistrate Judge Tomlinson:

As counsel for Defendants in this Fair Labor Standards Act (FLSA) lawsuit, we are responding to Plaintiff's November 7, 2012 letter requesting that "the Court issue an opinion letter" regarding trial date information. *See* Exhibit A (ECF Doc. 5).[1] No such "opinion letter" should issue. Instead, this lawsuit should be dismissed because Plaintiff's newly-filed Complaint constitutes an improper attempt to rekindle wage-and-hour claims originally asserted by Plaintiff against these same Defendants in *Moreno, et al. v. Nassau Country Club, et al.*, Eastern District of New York Case Number 11-CV-0436 (Seybert, J.)("Moreno I"). In Moreno I, all claims were dismissed without prejudice pending Plaintiff's still futile efforts to re-enter the United States through the "human rights parole visa" process to prosecute his lawsuit.

## I. THE FIRST *MORENO* LITIGATION AND PLAINTIFF'S UNAVAILABILITY TO PARTICIPATE THEREIN DURING 2011 OR 2012

On or about January 28, 2011, Moreno I was commenced by service of a Complaint substantially identical to the one in the instant action. *See* Exhibit B (Amended Complaint in Moreno I). It soon became clear that Plaintiff was unavailable to participate in discovery or sit for deposition (or attend trial), because, as Plaintiff's counsel acknowledged, Mr.

---

[1] The Complaint in the instant matter has not been served and service has not been accepted or waived. This letter is submitted without prejudice to or waiver of any defenses.



Moreno resides in Mexico and cannot lawfully enter the United States. Plaintiff's complete unavailability prompted Defendants to seek intervention of the Court. See Exhibit C (Moreno I, ECF Doc. 11; September 15, 2011 letter to Judge Lindsay and attachment thereto).

To cure Plaintiff's unavailability, Plaintiff's counsel claimed that he was in the process of "obtaining public interest parole [visa]" to enable Plaintiff to return to the United States. Plaintiff's counsel could not provide a timetable when the special purpose visa process would be complete. In Defendants' September 15, 2011 letter, Defendants explained to Judge Lindsay that they had incurred substantial costs defending the matter and, based on Plaintiff's unavailability and failure to prosecute his lawsuit, sought to move to dismiss the complaint.

In response to that application letter, Plaintiff's counsel wrote that he had "been assured Senatorial intervention in obtaining the public interest parole document needed" to assure his client's return to the United States for participation in the litigation. See Exhibit D (Moreno I, ECF Doc. 12; September 21, 2011 letter from Plaintiff's counsel to Judge Lindsay). Plaintiff suggested the parties simply "fashion a suitable discovery schedule" to accommodate his efforts to obtain a parole visa. Id. To accommodate Plaintiff, by Order dated September 26, 2011, Judge Lindsay stayed discovery and required Plaintiff's counsel provide a status update by October 31, 2011 concerning his parole visa efforts. See Exhibit E (Moreno I, ECF Doc.13; September 26, 2011 Order of J. Lindsay). Plaintiff's October 29, 2011 status update was similar to his prior representations, to wit, it was devoid of facts germane to Plaintiff's endeavor to obtain a parole visa. See Exhibit F (Moreno I, ECF Doc. 14; October 29, 2011 letter from Plaintiff's counsel to Judge Lindsay). All Plaintiff could muster was counsel's uncorroborated (and clearly erroneous) opinion that the Plaintiff's parole visa processing would take "60-90 days" to complete. Id. Surprisingly, Plaintiff's counsel explained that he still had not submitted the parole visa application. See Id.[2] Instead, Plaintiff renewed his earlier request for deposition of plaintiff to proceed via telephone and an extension of discovery.

During a lengthy November 10, 2011 teleconference with Judge Lindsay, the parties stipulated to a further stay of discovery and scheduled a teleconference for March 8, 2012. See Exhibit G (Moreno I, ECF Doc. 16; November 10, 2011 So Ordered minute entry of Magistrate Lindsay) and Exhibit H (excerpts of transcript of proceedings held before Magistrate Lindsay on November 10, 2011).

Upon conclusion of the four-month stay of discovery, a conference was held. During the March 8, 2012 teleconference with Mag. Judge Lindsay, Plaintiff's counsel again conceded he had failed to secure the parole visa for his client. In fact, all counsel could state was that he had not received a response from Senator Gillibrand's office. In effect, nothing had changed. At that time Plaintiff's counsel agreed to dismissal without prejudice, acknowledging his client's unavailability to prosecute Moreno I. See Exhibits I, J (Moreno I, ECF Docs. 18-19;

---

[2] "The completed application will be submitted upon receipt of the tax transcripts from the Internal Revenue Service." (emphasis added).



So Ordered minute entry of March 8, 2012 and Judge Seybert's Order of Discontinuance dated April 9, 2012).

## II.   PLAINTIFF FILED MORENO II AND THE LETTER APPLICATION, WITHOUT NOTICE TO DEFENDANTS

Despite the undersigned's representation of Defendants in Moreno I, Defendants received no further communication from Plaintiff's counsel prior to filing of the instant action ("Moreno II"). Defendants discovered its existence through counsel's monitoring of the federal docket. Defendants were not copied on Plaintiff's *ex parte* November 7, 2012 letter to the Court, which did not notify this Court of Moreno I or recite its procedural history or Magistrate Lindsay's rulings. Dkt. 5. Instead, Plaintiff's counsel contacted counsel for Defendants regarding Moreno II and his letter application in an email, dated November 12, 2012,[3] and attached the Complaint. In the email, Mr. Moser represented that "The USCIS requested a letter from Judge Tomlinson regarding dates on which he may be expected to testify." Since the case just started, dates are unknown. Plaintiff's failure to timely notify Defendants of his request is but one of many reasons why the requested relief should be denied.

## III.   PLAINTIFF'S REQUEST FOR AN ADVISORY OPINION FROM THIS COURT REGARDING A POSSIBLE TRIAL DATE SHOULD BE REJECTED, AND MORENO II DISMISSED

The assertion in Moreno II that Plaintiffs (Moreno and any putative FLSA collective action participants) "are residents of Nassau County" (Dkt. 1 ¶ 2) is incorrect. As Plaintiff's letter application makes clear, Plaintiff still resides in Mexico and his parole visa application remains at a standstill. Ex. A at 1.[4] Plaintiff remains unable to proceed with discovery and, evading Magistrate Lindsay's rulings, he has filed Moreno II. There is no basis for the Court to provide Plaintiff's counsel with an "opinion in letter form" as to the trial date because he remains unavailable for discovery or trial, and this action should not proceed.

Defendants expended substantial monies defending this matter during Moreno I. They cannot now be expected to defend against a new action by a Plaintiff, who remains unable to appear for deposition, trial or otherwise participate effectively in discovery. Nothing has changed to make Judge Lindsay's Order inapplicable. Nonetheless, Plaintiff seeks relief that flies in the face of that discontinuance, even though he is not ready to proceed. Despite being provided nearly two years to complete the parole visa application, he has failed to do so and has failed to prosecute this litigation.

---

[3] This belated communication does not excuse Plaintiff's counsel's *ex parte* communication with the Court.

[4] Senatorial intervention, if in fact ultimately made available, does not guarantee a parole visa will be approved. To the contrary, parole visa is rarely granted by the United States Department of Homeland Security. *Camaj v. Leutbecker*, 2009 U.S. Dist. LEXIS 112327, 1-2 (E.D. Mich. Dec. 3, 2009)(stating "[h]umanitarian parole is used sparingly to bring someone who is otherwise inadmissible into the United States for a temporary period of time due to a *compelling emergency*")(emphasis added).



　　　　　We ask that the Court deny Plaintiff's request for "an opinion in letter form" regarding trial date information and dismiss this redundant lawsuit because Plaintiff cannot prosecute it.  Alternatively, Defendants request a conference with Your Honor to discuss these matters prior to the January 17, 2013 initial conference.[5]

　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　JACKSON LEWIS LLP

　　　　　　　　　　　Paul J. Siegel

PJS:dc
Enclosures

cc:　　Steven J. Moser, Esq. (via ECF)
　　　　District Judge Denis R. Hurley (via ECF, courtesy copy via Federal Express)

4825-2668-3921, v. 2

---

[5] Defendants may also wish to seek costs and attorneys fees from Plaintiff and counsel based on the filing of Moreno II, which "unreasonably and vexatiously" multiplies these proceedings.  28 USCS § 1927.

# EXHIBIT A

# STEVEN J. MOSER, P.C.

ATTORNEY AT LAW

1 School Street, Suite 303
Glen Cove, New York 11542
Phone: (516) 671-1150
Fax: (516) 882-5420
stevenjmoser@gmail.com
http://www.stevenjmoser.com

**Of Counsel:**
James J. Keefe, Esq.

November 7, 2012

**VIA ECF**

Hon. A. Kathleen Tomlinson, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:   **Moreno v. Nassau Country Club**
      **12-CV-05324 (DRH)(AKT)**

Dear Judge Tomlinson:

I have been working with the U.S. Department of Homeland Security, USCIS, Humanitarian Affairs Branch, to obtain permission for my client, who now resides in Mexico, to return to the United States in order to testify.   I have obtained the assurance of Senatorial intervention in order to complete this process.

The USCIS has made the following request in order to approve the plaintiff's application for Public Interest Parole into the United States:

"Official Court documents which show the date the trial will start.   Additionally, please provide an estimate of when the trial will end, as well as the estimated time that Raul Moreno Carranza will need to be in the United States."

I have annexed the Government's "REQUEST FOR ADDITIONAL EVIDENCE".   I originally obtained an extension of the filing deadline for the additional documentation to October 25, 2012, and am seeking an additional adjournment from the Government.   The plaintiff respectfully requests that the Court issue an opinion in letter form as to these issues.

Respectfully yours,

Steven John Moser

*Refugee, Asylum, and International Operations Directorate*

**U.S. Department of Homeland Security**
20 Massachusetts Avenue, Room 3300
Washington, DC 20529



**U.S. Citizenship
and Immigration
Services**

July 27, 2012
In reply refer to: IAO/37583/JRM

Mr. Steven J. Moser, Esq.
Steven J. Moser, P.C.
1 School Street, Suite 303
Glen Cove, NY 11542

## REQUEST FOR ADDITIONAL EVIDENCE

Dear Mr. Moser:

This responds to your application received in this office on June 04, 2012 for a favorable exercise of parole authority by the Secretary of the Department of Homeland Security on behalf of Raul Moreno Carranza, born on October 07, 1960 in Mexico, A205 203 601.

At this time, the request cannot be adjudicated. You will need to submit the following documents:

1) Government issued identification (for example, a passport or birth certificate) for Raul Moreno Carranza, Steven John Moser, and Walter P. Moser;
2) Proof that Raul Moreno Carranza applied for a nonimmigrant visa and was denied;
3) Official Court documents which show the date the trial will start. Additionally, please provide an estimate of when the trial will end, as well as the estimated time that Raul Moreno Carranza will need to be in the United States.

Please mail your response to this Request for Additional Evidence to the Humanitarian Affairs Branch at the following address:

**U.S. Department of Homeland Security**
**U.S. Citizenship and Immigration Services**
**International Operations Division**
**Attn:  Humanitarian Affairs Branch**
**20  Massachusetts Avenue, N.W., Mailstop 2100**
**Washington, DC 20529**

# EXHIBIT B

STEVEN J. MOSER, P.C.
1 School Street, Suite 303, Glen Cove, New York  11542
Tel:  516-671-1150 Fax:  516-882-5420
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAUL MORENO, Individually, and on behalf of all others Similarly Situated | Case No. CV 11-0436 |
| Plaintiffs, | **COMPLAINT** |
| - against - | **Hon. Joanna Seybert, USDJ** |
| NASSAU COUNTRY CLUB and JIM COFFEY, | **Hon. Arlene R.  Lindsay,** **USMJ** |
| Defendant. | |

The plaintiff RAUL MORENO, Individually, and on behalf of all others Similarly Situated, by and through his undersigned attorney, hereby files this complaint against Defendants NASSAU COUNTRY CLUB and JIM COFFEY as follows:

<u>INTRODUCTION</u>

1.  Plaintiffs, bring this action against Defendants for unpaid overtime pursuant to the Fair Labor Standards Act (hereinafter "FLSA"), and unpaid overtime pursuant to the New York Labor Law.

<u>THE PARTIES AND THEIR RELATIONSHIP</u>

2.  Plaintiffs are residents of Nassau County.

3.  Defendant, NASSAU COUNTRY CLUB  is a corporation formed in the State of New York.

4.  Defendant NASSAU COUNTRY CLUB is a private club.

5.  Defendant NASSAU COUNTRY CLUB has a principal place of business in Glen Cove, New York.

6. Defendant NASSAU COUNTRY CLUB is the plaintiff's employer as defined in Section 203 of the Fair Labor Standard's Act.

7. Defendant NASSAU COUNTRY CLUB was engaged in commerce.

8. Defendant NASSAU COUNTRY CLUB has revenues in excess of $500,000.00 per year.

9. Defendant JIM COFFEY is a resident of the County of Nassau.

10. Defendant JIM COFFEY is the Assistant General Manager of the NASSAU COUNTRY CLUB.

11. Defendant JIM COFFEY acted in the interest of NASSAU COUNTY CLUB in relation to the plaintiffs.

12. Defendant JIM COFFEY had the power to hire and fire the plaintiffs.

13. Defendant JIM COFFEY supervised and controlled the plaintiffs' work schedules and conditions.

14. Defendant JIM COFFEY determined the rate and method of payment of the plaintiffs.

15. Defendant JIM COFFEY maintained employment records.

<u>JURISDICTION AND VENUE</u>

16. Jurisdiction of this civil action is conferred by Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) and venue is proper in this Court.

<u>FACTS</u>

17. Plaintiff RAUL MORENO and other similarly situated employees were employed with the Defendants during the applicable three (Federal) and six (New York

State) year statutes of limitations.

18. During the relevant time period defendant NASSAU COUNTRY CLUB owned and operated a golf course and clubhouse for its members and their guests.

19. During the relevant time periods the plaintiffs were employed in the maintenance of the grounds, buildings and equipment owned by the defendant, and in the service of its members and guests.

20. Plaintiffs worked in excess of 40 hours per week.

21. Plaintiffs were not paid one and one-half times the regular rate as required by 29 United States Code §207 (F.L.S.A §207) and 12 NYCRR §142-2.2 for hours worked in excess of 40 hours per week.

22. The plaintiff RAUL MORENO worked numerous days wherein the *spread of hours* exceeded 10 hours.

23. Plaintiff RAUL MORENO was not paid the spread of hours premium as required by the New York Codes, Rules & Regulations (NYCRR).

24. Plaintiffs did not perform work that meets the definition of exempt work under the FLSA or the New York Labor Law.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

25. Plaintiff RAUL MORENO brings <u>COUNT I</u> herein individually and on behalf all other "Collective Action Members" (collectively the "plaintiffs") as hereinafter defined as a collective action  pursuant to the FLSA, in respect to all claims that Plaintiffs and all persons similarly situated have against the Defendants as a result of Defendants' violations under the FLSA.

26. Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute the FLSA claims as a

collective action on behalf of all persons who are or were formerly employed by Defendants for the 3 year period prior to commencement of this action until judgment in this case (the "Collective Action Period"), who are (i) non-exempt employees within the meaning of the FLSA, and (ii) were compensated at rates less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

27. Plaintiff RAUL MORENO will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with the members of this collective action.

28. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and all other Collective Action Members are:

     a. Whether the Defendants employed the Collective Action members within the meaning of the FLSA;

     b. Whether Defendants failed to pay the Collective Action Members overtime compensation as required by the FLSA and the regulations promulgated thereunder;

     c. Whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and

     d. Whether Defendants are liable for all damages claimed hereunder,

including but not limited to compensatory and liquidated damages, interest, costs and disbursements and attorneys' fees.

29. Plaintiff RAUL MORENO knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

### *STATEMENT OF CLAIM*

### *COUNT I:*

### *VIOLATIONS OF THE FAIR LABOR STANDARDS ACT*

30. Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees...for a workweek longer than 40 hours unless such employee receive compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

31. The plaintiffs are "employees" covered by the FLSA, 29 U.S.C. §207(a)(1).

32. Defendants are the plaintiffs' "employers" under §207(a)(2).

33. Defendants, as plaintiffs' employers, were and are obligated to compensate plaintiffs for overtime hours at the overtime rate.

34. The plaintiffs worked overtime on a regular basis.

35. In order to avoid the overtime provisions of the FLSA and the regulations promulgated thereto the defendants designed an artifice as follows:

    a. All hours worked up to forty hours per week were paid at rate designated by the defendants as "regular."

    b. For hours worked in excess of 40 hours per week, the defendants designated a lower rate of pay which, when multiplied by 1½, equaled the "regular" rate. Representative payroll records are annexed hereto as

exhibit 1.

36. As part of the plaintiffs' wages, the defendants furnished room and board to the plaintiffs.

37. The defendants failed to include the fair value of the room and board in determining the "regular rate" as required by 29 C.F.R. §778.116.

38. Defendants have failed and refused to compensate the plaintiffs as required by law for numerous overtime hours worked.

39. This failure and refusal to pay compensation as required by the FLSA was willful and intentional.

40. The FLSA, 29 U.S.C. 216(b) provides that an employer who fails to compensate for overtime shall be liable for an amount in liquidated damages equal to  the unpaid overtime.

41. The FLSA, 29 U.S.C. 216(b) provides that an employer who fails to compensate for overtime shall be liable for the plaintiff's reasonable attorney's fees.

### *COUNT II:*

#### *OVERTIME VIOLATIONS OF THE NEW YORK LABOR LAW*

42. Plaintiff RAUL MORENO repeats and realleges each and every allegation previously set forth herein.

43. Pursuant to New York Law the defendants were obligated to pay overtime pay at the rate of one and one-half times the regular rate of pay in excess of forty (40) hours in a given work week pursuant to 12 NYCRR 142-2.2.

44. That pursuant to the New York Labor Law §663 the defendants owe to plaintiff RAUL MORENO overtime wages in an amount to be determined by the court.

45. Plaintiff further contends that the above-mentioned failure, neglect and/or refusal of Defendants as aforesaid to pay overtime as provided by statute herein were willful.

46. Pursuant to N.Y. Lab. Law §663 plaintiff RAUL MORENO is entitled to, as liquidated damages, a statutory penalty equal to 100% of the aforesaid overtime wages due and owing to him by Defendants.

47. Pursuant to the New York Labor Law §663 the plaintiff RAUL MORENO is entitled to costs and Reasonable Attorney's fees.

### *COUNT III*

### *VIOLATIONS OF SPREAD OF HOURS PREMIUM UNDER NEW YORK LAW*

48. Plaintiff RAUL MORENO repeats and realleges each and every allegation previously set forth herein.

49. 12 NYCRR §142-2.4 provides that "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which…the spread of hours exceeds 10 hours."

50. Pursuant to 12 NYCRR 142-2.18 the *spread of hours* is the interval between the beginning and the end of an employee's workday.

51. Plaintiff RAUL MORENO worked numerous days wherein his spread of hours exceeded 10 hours.

52. Defendants failed to pay the spread of hours premium.

53. Defendants are liable to the plaintiff RAUL MORENO for the *spread of hours premium* for numerous days.

54. Defendants are liable for a statutory penalty equal to 100% of the aforementioned spread of hours premium pursuant to N.Y. Lab. Law §663.

Complaint
*Moreno v. Nassau Country Club*

55. Defendants are liable for plaintiff's reasonable attorney's fees pursuant to N.Y. Lab. Law §663.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment in their favor and award them the following relief:

ON THE FIRST COUNT, (a) an order enjoining the alleged violations (b) liquidated damages under the FLSA, (c) attorney's fees (c) costs;

ON THE SECOND COUNT, (a) all unpaid overtime wages, (b) liquidated damages under the New York Labor Law, (c) attorney's fees and (d) costs;

ON THE THIRD COUNT, (a) the spread of hours premium, (b) liquidated damages, (c) plaintiff's Attorney's fees and (d) costs.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:          Glen Cove, New York
               January 18, 2011

                                        Respectfully submitted,

                                        /s/

                                        Steven J. Moser, P.C.
                                        One School Street
                                        Suite 303
                                        Glen Cove, NY  11542
                                        Tel:  (516) 671-1150
                                        Fax:  (516) 882-5420
                                        *Attorneys for Plaintiffs*

Complaint
*Moreno v. Nassau Country Club*

# EXHIBIT C

Representing Management Exclusively in Workplace Law and Related Litigation



| | | | |
|---|---|---|---|
| Jackson Lewis LLP | ALBANY, NY | DETROIT, MI | MILWAUKEE, WI | PORTLAND, OR |
| 58 South Service Road | ALBUQUERQUE, NM | GREENVILLE, SC | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| Suite 410 | ATLANTA, GA | HARTFORD, CT | MORRISTOWN, NJ | PROVIDENCE, RI |
| Melville, New York 11747 | BALTIMORE, MD | HOUSTON, TX | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| Tel 631 247-0404 | BIRMINGHAM, AL | INDIANAPOLIS, IN | NEW YORK, NY | RICHMOND, VA |
| Fax 631 247-0417 | BOSTON, MA | JACKSONVILLE, FL | NORFOLK, VA | SACRAMENTO, CA |
| www.jacksonlewis.com | CHICAGO, IL | LAS VEGAS, NV | OMAHA, NE | SAN DIEGO, CA |
| | CINCINNATI, OH | LONG ISLAND, NY | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| | CLEVELAND, OH | LOS ANGELES, CA | ORLANDO, FL | SEATTLE, WA |
| | DALLAS, TX | MEMPHIS, TN | PHILADELPHIA, PA | STAMFORD, CT |
| | DENVER, CO | MIAMI, FL | PHOENIX, AZ | WASHINGTON, DC REGION |
| | | | PITTSBURGH, PA | WHITE PLAINS, NY |

MY DIRECT DIAL IS: 631-247-4605
MY E-MAIL ADDRESS IS: SIEGELP@JACKSONLEWIS.COM

September 15, 2011

**VIA ECF**

Hon. Arlene R. Lindsay
United States Magistrate Judge
U. S. District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-4438

Re:  Raul Moreno, et al v. Nassau Country Club, et al,
Case No. 11-CV-0436

Dear Magistrate Judge Lindsay:

As counsel for Defendants, we are writing to request a Court conference to address discovery deficiencies and Defendants' contemplated motion to dismiss this action for failure to prosecute.

By way of background, this Fair Labor Standards Act and New York Labor Law action was commenced on January 28, 2011. Dkt. Entry 1. Upon information and belief, Plaintiff, a former employee of Defendant Nassau Country Club, filed this action immediately prior to (perhaps following) permanent relocation to Mexico. Interrogatories and document production requests were served on June 23, 2011. Plaintiff's deposition was scheduled for August 22, 2011, but was cancelled due to Plaintiff's unavailability.

Due to Plaintiff's permanent residence in Mexico, he is unable to participate in discovery, either by verifying his interrogatories as is required by the Federal Rules, or appearing for deposition.[1] At present, he would not be available to appear at trial of his own lawsuit. While Plaintiff's counsel has expressed the intent to seek a "public interest parole [visa]" to permit Plaintiff to prosecute this action, he has provided no timetable for obtaining such visa. There is no assurance that a request will be granted (or when that might occur). *See* Email at Exhibit A; *Camaj v. Leutbecker*, 2009 U.S. Dist. LEXIS 112327, 1-2 (E.D. Mich. Dec. 3, 2009)("Humanitarian parole is used sparingly to bring someone who is otherwise inadmissible

---

[1] Plaintiff's counsel has provided broad, general objections to Defendants' Requests for Production of Documents, but has not provided any documents.


**jackson | lewis**
Attorneys at Law

Hon. Arlene R. Lindsay
U. S. District Court
Eastern District of New York
September 15, 2011
Page 2

Exhibit A; *Camaj v. Leutbecker*, 2009 U.S. Dist. LEXIS 112327, 1-2 (E.D. Mich. Dec. 3, 2009)("Humanitarian parole is used sparingly to bring someone who is otherwise inadmissible into the United States for a temporary period of time due to a *compelling emergency*") (emphasis added).

Defendants have incurred substantial costs defending this action, filed by Plaintiff even as he knew he would be unavailable to prosecute it. Furthermore, the parties are operating under the Court's discovery deadline of November 18, 2011. Dkt. Entries 9, 10. Given Plaintiff's unavailability and lack of discovery compliance, Defendants intend to move for dismissal of this action. *Dysko v. Lach*, 2010 U.S. Dist. LEXIS 17402 (E.D.N.Y. Fe. 26, 2010)(adopting Reporting and Recommendation recommending dismissal for failure to prosecute following court-supervised efforts by plaintiff's counsel to contact non-participating plaintiff who allowed action to lie dormant "for several months"); *Davis v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 60181 (E.D.N.Y. June 20, 2007)(dismissing with prejudice claims of Plaintiff *pro se* who failed to appear for deposition and who had been warned that dismissal would result from failure to appear) *adopted without opinion by Davis v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 58661 (E.D.N.Y. Aug. 8, 2007).

Defendants' respectfully request that the Court schedule a discovery conference to discuss these matters further with Your Honor.

Respectfully submitted,

JACKSON LEWIS LLP

Paul J. Siegel, Esq.

NPT/mf
cc:     Steven J. Moser, Esq. (via ECF)
        Noel P. Tripp, Esq. (internal)
        District Judge Joanna Seybert (courtesy copy via Federal Express)

4838-1386-3946, v. 1

# EXHIBIT A

**Tripp, Noel P. (Long Island)**

| | |
|---|---|
| **From:** | Steven J. Moser [sjm@stevenjmoser.com] |
| **Sent:** | Wednesday, August 31, 2011 10:05 AM |
| **To:** | Tripp, Noel P. (Long Island) |
| **Subject:** | Moreno v. Nassau Country Club |

Mr. Tripp:

Enclosed please find plaintiff's responses to discovery demands.

As I mentioned, I am in the process of obtaining public interest parole for my client to enter the United States. At that time I will have him execute a verification of the responses and will produce him for the examination before trial. I anticipate having a clearer timeline within a week.

Vty

Steven John Moser

1

# EXHIBIT D

# STEVEN J. MOSER, P.C.
ATTORNEY AT LAW

1 School Street, Suite 303
Glen Cove, New York 11542
Phone: (516) 671-1150
Fax: (516) 882-5420
sjm@stevenjmoser.com
http://www.stevenjmoser.com

September 21, 2011

Of Counsel:
Hon. Joel B. Meirowitz
James J. Keefe, Esq.

Hon. Arlene R. Lindsay
United States Magistrate Judge
United States District Court, EDNY
100 Federal Plaza
Central Islip, NY 11722

Re:     *Moreno v. Nassau Country Club, et al.*
        Case No. 11-CV-0436, *FLSA Class Action*

Dear Judge Lindsay:

I am writing to request leave of the court to allow the taking of the plaintiff's deposition via telephone pursuant to Rule 30.

As you have been made aware by counsel for the defendants via their letter dated September 15, 2011, Mr. Moreno is in Mexico. I am in the process of obtaining a public interest parole into the United States for the purpose of securing his testimony at the time of trial. To that end, I have been assured Senatorial intervention in obtaining the public interest parole document needed.

Rather than pursuing motions to dismiss, I am proposing that the parties, pursuant to Local Rule 26.4, fashion a suitable discovery schedule to be so-ordered by the court. While I understand that in the adversarial process we must pursue sanctions in limited cases in the best interests of our clients, I believe that the sanction of dismissal will produce an unjust result in this case.

It was under fear of pressure and retaliation by his employer the Nassau Country Club that Mr. Moreno resigned. Not being able to find alternate employment, he was forced to return to Mexico. The allegations in this case are twofold: First there was an unlawful agreement between Mr. Moreno and his employer that he would not be paid overtime for hours in excess of 40 hours per week. To effectuate that unlawful agreement, his "regular rate" for hours in excess of 40 hours per week was reduced by 1/3, so that his overtime rate was identical to his regular rate.[1] Second, the defendant Club provides on-site housing and meals for approximately 20 Philippine and Hispanic immigrant workers. These workers live on the third floor of the Clubhouse, two per room. These on-site workers are paid less than their counterparts who work off-site, because the Club considers the housing and meals as part of their compensation. Yet, the value of housing and meals is not included for the purpose of computing overtime.

---

[1] The defendant has already admitted that there is at least one other employee who was paid for overtime in this same manner.

STEVEN J. MOSER, ESQ.

It would seem unjust to deny these immigrant workers a class representative under these circumstances.   A more just result is to allow Mr. Moreno to testify via telephone for the purpose of taking his deposition, give the collective action members an opportunity to opt into the action, and to give Mr. Moreno the opportunity to obtain the proper entrance documents to testify at the time of trial.

This request is made in light of the congressional purpose of the FLSA to effectuate full employment by spreading the work among the population, and in protecting workers from oppressive working conditions.

It must also be brought to the attention of the court that although discovery demands were served on the defendant on August 15, 2011, the defendant has not responded to the demands (See letter annexed hereto as Exhibit 1).

Respectfully submitted,

Steven John Moser

CC:    Hon. Joanna Seybert, USDJ
       Paul J. Siegel, Esq. (via ECF)

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RAUL MORENO, Individually and on behalf
of all others Similarly Situated,

                    Plaintiff,            **ORDER**

      -against-                    CV 11-436 (JS)(ARL)

NASSAU COUNTRY CLUB, et al.,

                    Defendant.
--------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the court is the defendants' request for a conference to address their contemplated
motion to dismiss for failure to prosecute and the plaintiff's response to the letter. The court finds
that a conference is not necessary. The court can rule on the request based on the papers
submitted.

      On January 28, 2011, the plaintiff commenced this FLSA and New York Labor Law
action, alleging, among other things, that the defendants had failed to pay him overtime and to
include the fair value of room and board in determining his "regular rate." The defendants served
the plaintiff with interrogatories and document requests on June 23, 2011, and noticed his
deposition for August 22, 2011. Counsel for the plaintiff responded to the document requests by
providing general objections to the document demand without any documents. The plaintiff did
not verify his interrogatories, nor did he appear for his deposition because he had returned to
Mexico.

      Counsel for the plaintiff has indicated that he is in the process obtaining a public interest
parole visa, which he hopes, with Senatorial intervention, will secure his client's testimony at
trial. In addition, counsel has offered to make his client available for a telephone deposition.
Although the undersigned does not believe that this case is ripe for a motion to dismiss, the court
does find that discovery should be stayed based on counsel's representation. On or before
October 31, 2011, counsel for the plaintiff is directed to advise the court of the status of his
efforts. The court may reconsider the motion at that time.

Dated: Central Islip, New York          **SO ORDERED:**
       September 26, 2011                /s
                                     ARLENE R. LINDSAY
                                     United States Magistrate Judge

# EXHIBIT F

# STEVEN J. MOSER, P.C.
## ATTORNEY AT LAW

1 School Street, Suite 303
Glen Cove, New York  11542
Phone: (516) 671-1150
Fax: (516) 882-5420
sjm@stevenjmoser.com
http://www.stevenjmoser.com

**Of Counsel:**
Hon. Joel B. Meirowitz
James J. Keefe, Esq.

October 29, 2011

Hon. Arlene R. Lindsay, USMJ
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:  *Moreno v. Nassau Country Club, et al.*
     Case No. 11-CV-0436, *FLSA Collective Action*

Dear Judge Lindsay:

I am writing pursuant to your instructions as per your order dated September 26, 2011, a copy of which is annexed hereto.

I am a former District Adjudications Officer with the United States Customs and Immigration Service.   I have included for the court's convenience a copy of a brief article regarding the nature of the Public Interest Parole status that we seek.

As of the date of this letter I have taken the following actions to obtain the travel document:

1. Located a financial sponsor with sufficient financial resources to support Mr. Moreno during his stay;
2. Completed the affidavit of support;
3. Made a request to the IRS to obtain tax transcripts of the financial sponsor;
4. Completed form I-131, application for a travel document.
5. Communicated with the Senator's office to confirm Senatorial intervention.

The processing time to obtain the travel document is 60-90 days.  The completed application will be submitted upon receipt of the tax transcripts from the Internal Revenue Service.

I have included for the court's information a copy of plaintiff's responses to Defendants' First Request for Production of Documents and Defendants' First Set of Interrogatories.  Plaintiff previously exchanged several hundred pages of pay stubs.  Again, I renew my offer to make Mr. Moreno available for a telephone deposition.  Furthermore, if the defendants agree to accept a document notarized abroad, I can produce verification within three weeks.

STEVEN J. MOSER, ESQ.

The plaintiff respectfully suggests that any delay prejudices the purported class rather than the defendants, as the statute has not tolled with regard to the federal claims asserted for class members.

Rather than pursuing motions to dismiss, I am proposing that the parties, pursuant to Local Rule 26.4, fashion a suitable discovery schedule to be so-ordered by the court. While I understand that in the adversarial process we must pursue sanctions in limited cases in the best interests of our clients, I believe that the sanction of dismissal will produce an unjust result in this case.

If the defendants do not consent to an extension of discovery deadlines, plaintiff hereby makes application to the court for extension of the discovery deadline to June 1, 2012, and motion for conditional certification to be made on or before December 1, 2011.

Respectfully submitted,

/s/

Steven John Moser

CC:    Hon. Joanna Seybert, USDJ
       Paul J. Siegel, Esq. (via ECF)

Case 2:12-cv-05324-DRH-AKT  Document 6  Filed 11/20/12  Page 30 of 67 PageID #: 52
Case 2:11-cv-00436-JS-ARL  Document 13  Filed 09/26/11  Page 1 of 1 PageID #: 72
Case 2:11-cv-00436-JS-ARL  Document 14-1  Filed 10/29/11  Page 1 of 1 PageID #: 75

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RAUL MORENO, Individually and on behalf
of all others Similarly Situated,

                              Plaintiff,            **ORDER**

        -against-                      CV 11-436 (JS)(ARL)

NASSAU COUNTRY CLUB, et al.,

                             Defendant.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the court is the defendants' request for a conference to address their contemplated motion to dismiss for failure to prosecute and the plaintiff's response to the letter. The court finds that a conference is not necessary. The court can rule on the request based on the papers submitted.

      On January 28, 2011, the plaintiff commenced this FLSA and New York Labor Law action, alleging, among other things, that the defendants had failed to pay him overtime and to include the fair value of room and board in determining his "regular rate." The defendants served the plaintiff with interrogatories and document requests on June 23, 2011, and noticed his deposition for August 22, 2011. Counsel for the plaintiff responded to the document requests by providing general objections to the document demand without any documents. The plaintiff did not verify his interrogatories, nor did he appear for his deposition because he had returned to Mexico.

      Counsel for the plaintiff has indicated that he is in the process obtaining a public interest parole visa, which he hopes, with Senatorial intervention, will secure his client's testimony at trial. In addition, counsel has offered to make his client available for a telephone deposition. Although the undersigned does not believe that this case is ripe for a motion to dismiss, the court does find that discovery should be stayed based on counsel's representation. On or before October 31, 2011, counsel for the plaintiff is directed to advise the court of the status of his efforts. The court may reconsider the motion at that time.

Dated: Central Islip, New York
       September 26, 2011

                                 **SO ORDERED:**

                                     /s
                               ARLENE R. LINDSAY
                               United States Magistrate Judge

## The ABC'S Of Immigration: Parole Status

by Gregory Siskind

**What is parole status?**

An individual who is ineligible to enter the US as a refugee, immigrant or nonimmigrant may be "paroled" into the US by the Secretary of Homeland Security. This provision of the law is only used for emergency, humanitarian and public interest reasons. The individual who is paroled into the US is known as a "parolee".

**What are the different kinds of parole status?**

An individual may be paroled into the US under either Humanitarian Parole or Public Interest Parole.

**Who can request parole status?**

Humanitarian Parole can only be requested for persons who are outside of the U.S. Anyone can file an application for humanitarian parole to include the prospective parolee, a sponsoring relative, an attorney or any other interested individual.

**Are there special provisions for nationals of certain countries?**

Public Law 101-67, also known as the Specter Amendment (formerly the Lautenberg Amendment) allows for the adjustment of status of individuals who are nationals of the former Soviet Union, Vietnam, Laos and Cambodia. These parolees may apply for green cards if they were paroled into the US between August 15, 1988 and September 30, 2004.

**Can Humanitarian Parole applications be adjudicated for individuals currently in the United States?**

Request for humanitarian parole can only be accepted for individuals who are currently outside of the United States.

**How does an individual apply for parole status?**

Requests for Humanitarian Parole must be submitted to the following address:

Department of Homeland Security
425 I Street, NW
ATTN: Parole and Humanitarian Assistance Branch
Washington, DC 20536

A request for humanitarian parole may be submitted by anyone and should be submitted on Form I-131, Application for Travel Document. There is a filing fee for filing applications for humanitarian parole. Additionally, Form I-134, Affidavit of Support, is also needed to

ensure that the applicant will not become a public charge. A parole request should include information that is specific, verifiable and complete. Evidence of the claimed circumstances should also be submitted.

Canadians must submit Form I-131, Application for Travel Document to the Director of the office that has jurisdiction over the area where the alien intends to enter the United States.

### How can I find out the status of my application?

To check the status of your application, please contact the Parole and Humanitarian Assistance Branch, Washington, D.C. directly in writing. Please provide them with specific information about your application.

### Does Humanitarian Parole expire?

Humanitarian paroles are granted for a period of time to coincide with the duration of the emergency or humanitarian situation that forms the basis for the request. There is a maximum time limit of 1 year.

### What can I do if my case is not approved?

The denial of a request for humanitarian parole is a discretionary determination based upon a review of all of the evidence submitted. There is no statutory provision for appeal. If there are new facts that you would like considered however, a new submission may be sent to the Parole and Humanitarian Assistance Branch as a new case for consideration, with a new filing fee.

### Can parolees work in the US?

Public interest parolees may apply for work authorization on Form I-765, Application for Employment Authorization. Parolees admitted for humanitarian or emergency reasons are not eligible to apply for employment authorization.

### Can parolees apply for green cards (permanent resident status)?

Only parolees granted through the Specter Amendment, Cuban/Haitian parolees, or South East Asian Public Interest Parolees (PL 106-429) can apply for green cards. These individuals may apply for green cards after one year of physical residence in the US on Form I-485, Application to Register Permanent Residence or Adjust Status with the appropriate fees (applicant aged 14-79 must also pay a fingerprinting fee). These individuals must also submit medical exam results.

Individuals paroled for humanitarian or other emergency reasons are not eligible to apply for green cards as parolees. They can apply if they qualify under another immigration provision, such as employment.

### Can a parolee file an immigrant petition on behalf of a relative abroad?

A parolee can file an immigrant petition on behalf of a relative abroad provided that the parolee has already adjusted to permanent resident status. However, if the relative is otherwise eligible for refugee processing, the parolee can file an affidavit of relationship on the relative's behalf.

## Can parolees travel abroad?

Only parolees who have adjusted their status to permanent residents may travel abroad using a travel document.

## Can parolees apply for citizenship?

Parolees are eligible to apply for citizenship five years from the date they entered the US as parolees if they have already adjusted to permanent resident status.

---

**Gregory Siskind** (gsiskind@visalaw.com) is a partner in the law firm of Siskind, Susser, Haas and Devine (www.visalaw.com), which has offices in the United States and around the world. He is an active member of the American Immigration Lawyers Association (AILA). He is a member of the American Bar Association (ABA), where he currently serves as Chairman of the Law Practice Management Publishing Board and on the Governing Council of the Law Practice Management Section. He was one of the first lawyers in the country (and the very first immigration lawyer) to set up a website for his practice and he was the first attorney in the world to distribute a firm newsletter via e-mail listserv. He is a co-author of *The J Visa Guidebook* published by LexisNexis Matthew Bender, and the author of *The Lawyer's Guide to Marketing on the Internet*, published by the ABA. He graduated magna cum laude from Vanderbilt University and received his law degree from the University of Chicago.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAUL MORENO, Individually, and on behalf of all
others Similarly Situated

                                      Plaintiffs,

- against -

NASSAU COUNTRY CLUB and JIM COFFEY,

                                     Defendant.

Case No. CV 11-0436

PLAINTIFF'S RESPONSES TO
DEFENDANTS FIRST
REQUEST FOR PRODUCTION
OF DOCUMENTS

The Plaintiff RAUL MORENO, by his attorneys Steven J. Moser, P.C., responds to Defendant's First Demand for Production of Documents as follows:

INTRODUCTORY STATEMENT

On May 31, 2011 the plaintiff produced copies of pay statements for Raul Moreno for the six year period prior to the filing of the complaint. These represent all relevant documents in the plaintiff's possession.

Plaintiff objects to each and every one of defendants document demands to the extent that they seek to obtain information that is protected by the attorney/client privilege and/or the work product doctrine.

Plaintiff further objects to the instructions and definitions given by the defendant to the extent they do not comply with Local Civil Rule 26.3.

These responses are based on current investigation and discovery and the responding party reserves the right to amend or supplement these responses based on information resulting from further investigation and discovery, and to introduce at trial any and all such evidence. The responding party makes these responses with express reservation as to the competency, relevance, materiality, and the admissibility of the response, the subject matter thereof, any

documents discussed, produced or identified in connection therewith, as evidence for any purpose in any further proceedings in this action, with further reservation of the right to move for a protective order to protect the confidentiality of the information provided. To the extent that the plaintiff objects to any document demands, the plaintiff expresses its intention to seek a protective order should the defendant move to compel responses thereto.

## RESPONSE TO REQUESTS FOR PRODUCTION

1.      Any and all documents relating to, summarizing, or setting forth all or part of any communication, whether oral or written, between Plaintiff and Defendants, or any representative thereof,  regarding alleged failure to pay minimum wages, overtime, spread of hours premium, or other wages or any other alleged wrongdoing, and Plaintiff's efforts to obtain relief therefrom.

**NONE**

2.      All documents relating to the terms and conditions of Plaintiff's employment with Defendant NCC, including employee handbooks, benefit plans, memoranda and policy statements received or obtained by Plaintiff and any other documents relating to the terms and conditions of his employment.

**NONE**

3.      All documents substantiating, relating or referring to any employment held by Plaintiff since January 2000, including self-employment, and Plaintiffs income therefrom, including, but not limited to, pay stubs, work schedules, W-2 or 1099 tax forms, and federal, state or local tax returns, with attached schedules. (With respect to any records or documents regarding Plaintiff in the possession of any employer identified in response to this inquiry or in response to Defendants' First Set of Written Interrogatories to Plaintiff, Defendants request that Plaintiff execute an Employment Records Authorization for each such employer to allow Defendants to obtain and examine copies of said records. Copies of Employment Records Authorization forms for Plaintiff's use are attached hereto as Exhibit A.)

**All pay stubs in the plaintiff's possession were previously provided on May 31, 2011. Plaintiff objects to discovery of tax returns, as they are not relevant to FLSA claims, nor is there a compelling need for such disclosure. Uto v. Job Site Services, 269 F.R.D. 209 (E.D.N.Y. 2010).**

4.      All written statements rendered by persons contacted or interviewed by or on behalf of Plaintiff in connection with his claims in this matter.

**Plaintiff objects to this demand as it seeks to obtain information that is protected by the attorney/client privilege and/or the work product doctrine.**

5.      All documents relating to lawsuits, administrative proceedings or other claims (including proceedings seeking remedies for injuries or pain and suffering, unemployment benefits, workers' compensation benefits or other claims) filed by Plaintiff against any employer or individual, including Defendants.

**NONE**

6.      All personal diaries, logs, calendars, note books, appointment books, social media sites, other documents or things maintained by Plaintiff, including documents maintained on Plaintiff's personal computer, which contain references to or notations about Plaintiff's employment with Defendant NCC or the allegations in this lawsuit.

**NONE**

7.      All documents relating to the claims or defenses on this matter, which were received by Plaintiff from, or provided by Plaintiff to: (a) either or both Defendants; (b) any employer or prospective employer since January, 2000; (c) any employee or other representative of Defendants; (d) the New York State Department of Labor, including, without limitation, its Unemployment Insurance; or (e) the U.S. Department of Labor or any other federal, state or local governmental entity or agency.

**NONE**

8.      Any and all documents that Plaintiff believes may be introduced as exhibits at trial.

**See response to No. 3 herein.**

9.      Any and all documents supporting Plaintiff's contentions as set forth, inter alia, in the Amended Complaint that Defendant Coffey ad the power to hire and fire Plaintiff; supervised and controlled Plaintiff's work schedule and conditions; determined the rate and method of payment of Plaintiff; or maintained employment records relating to Plaintiff.

**NONE**

10.     Any and all documents taken (whether served electronically or otherwise) by Plaintiff from Defendants.

**NONE**

11.     Plaintiff's tax-returns and any addendums thereto, and Forms W-2 and 1099, for calendar years 2004 through 2011.

**See response to No. 3 herein.**

12.     All documents which define, set forth or otherwise relate to Plaintiff's job duties and job titles, as they existed when Plaintiff was hired and as they may have changed while Plaintiff was employed by Defendant NCC.

**NONE**

13.     All documents referencing or reflecting any communication(s) between Plaintiff and any other person (other than his counsel) regarding his lodging, meals, job duties or hours of work, whether on a work week by work week basis or otherwise.

**See response to No. 3 herein.**

14.     Any and all documents concerning Plaintiff's allegations that he worked overtime on a regular basis.

**See response to No. 3 herein.**

15.     Any and all documents concerning the allegation, contained in Paragraph 51 of the Amended Complaint, that Plaintiff worked numerous days when his spread of work hours (i. e. first and last work hours of the day) exceeded 10 hours.

**See response to No. 3 herein.**

16.     All cell phone bills related to calls Plaintiff made or received from January 2005 through the present.

**Plaintiff objects to this request on grounds that it is overly burdensome and not likely to lead to the discovery of admissible evidence.**

17.     All records since January 2005 showing days or time off while Plaintiff was employed by Defendant NCC including, but not limited to, personal calendars/diaries, date books, travel records, child care records, etc.

**See response to No. 3 herein.**

18.     All documents submitted or received by Plaintiff, with regard to disability benefits, workers compensation benefits or unemployment insurance benefits since 2004. (Please provide duly executed authorization in the form annexed hereto, addressed to each entity from whom you received benefits).

**NONE**

19.     Any and all documents relating to any bankruptcy or creditor-debtor proceeding involving Plaintiff.

**NONE**

20.  All documents that Plaintiff utilized, referred to or relied upon to prepare answers to Defendants' First Set of Interrogatories.

**See response to No. 3 herein.**

21.  If Plaintiff is seeking attorneys' fees in this matter, any and all documents concerning Plaintiffs fee arrangement with his attorney.

**The plaintiff does not have sufficient resources to pay attorney his hourly fees.  Plaintiff's counsel intends on using the lodestar method employed by the Second Circuit, by multiplying the hours expended in the prosecution of this case by an hourly rate of $300.00.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998).**

22.  Identify any and all documents that reflect, establish or otherwise are relevant to Plaintiff's places of residence, both at NCC and elsewhere, since January 1, 2000.

**NONE**

23.  Identify any and all documents that reflect, establish or otherwise are relevant to all employers of Plaintiff since January 1, 2000.

**NONE**

24.  Identify any and all documents that reflect, establish or otherwise are relevant to all hours of work of Plaintiff while employed by Defendant NCC.

**See response to No. 3 herein.**

25.  Identify any and all documents that reflect, establish or otherwise are relevant to Plaintiff's compensation; eligibility for overtime pay; lodging on or off NCC premises; access to meals at Defendant NCC; or, any similar subject.

**See response to No. 3 herein.**

26.  Identify any and all documents that reflect, establish or otherwise are relevant to Plaintiff's immigration status that enabled him to be employed by Defendant NCC throughout his employment and describe the nature of that documented work status.

**Plaintiff objects to the request, as the plaintiff's immigration status is not relevant to FLSA claims, and plaintiff is otherwise entitled to a protective order.  See Uto v. Job Site Services, Inc., 269 F.R.D. 209 (E.D.N.Y. 2010); Flores v. Amigon, 233 F.Supp.2d 462 (E.D.N.Y.2002); Liu v. Donna Karan Int'l, Inc., 207 F.Supp.2d 191 (S.D.N.Y.2002); Rengifo v. Erevos Enter., Inc., No. 06 Civ. 4266, 2007 WL 894376 (S.D.N.Y. Mar. 20, 2007);  Avila–Blum v. Casa de Cambio Delgado, 236 F.R.D. 190 (S.D.N.Y.2006);**

27.     Identify any and all documents that reflect, establish or otherwise are relevant to Plaintiff's claims against Defendant Coffey.

**NONE**

Dated:          Glen Cove, New York
                August 30, 2011

                                        Respectfully submitted,

                                        Steven John Moser
                                        STEVEN J. MOSER, P.C.
                                        *Attorneys for Plaintiff*
                                        1 School Street, Suite 303
                                        Glen Cove, New York  11542
                                        Tel:  516-671-1150
                                        Fax:  516-882-5420
                                        sjm@stevenjmoser.com

TO:     Noel Tripp, Esq.
        JACKSON LEWIS LLP
        *ATTORNEYS FOR DEFENDANTS*
        58 South Service Road, Suite 410
        Melville, New York  11747
        (631) 247-0404
        trippn@jacksonlewis.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAUL MORENO, Individually, and on behalf of all others Similarly Situated<br><br>Plaintiffs,<br><br>- against -<br><br>NASSAU COUNTRY CLUB and JIM COFFEY,<br><br>Defendant. | Case No. CV 11-0436<br><br>PLAINTIFF'S RESPONSES TO DEFENDANTS FIRST SET OF INTERROGATORIES |

The Plaintiff RAUL MORENO, by his attorneys Steven J. Moser, P.C., responds to Defendant's First Interrogatories as follows.

## INTRODUCTORY STATEMENT

Plaintiff objects to each and every one of Defendants' interrogatories to the extent that it seeks to obtain information that is protected by the attorney/client privilege and/or the work product doctrine.

Plaintiff further objects to the instructions and definitions given by the defendant to the extent they do not comply with Local Civil Rule 26.3.

These responses are based on current investigation and discovery and the responding party reserves the right to amend or supplement these responses based on information resulting from further investigation and discovery, and to introduce at trial any and all such evidence. The responding party makes these responses with express reservation as to the competency, relevance, materiality, and the admissibility of the response, the subject matter thereof, any documents discussed, produced or identified in connection therewith, as evidence for any purpose in any further proceedings in this action, with further reservation of the right to move for a protective order to protect the confidentiality of the information provided.

## INTERROGATORY NO. 1.

With respect to Plaintiff's employment by Defendant NCC, please identify Plaintiff's job title, job duties, and supervisor at the time he was hired and all subsequent job titles, job duties, and supervisor(s) while Plaintiff was employed by Defendant NCC and the date(s) when such changes occurred.

## ANSWER:

Plaintiff does not know his job title. He was employed in the maintenance of the main clubhouse of the Nassau Country Club (the Club), and in the cleaning and moving of Golf Cars for the Club. In the opinion of counsel, he would be described as a "handyman." He performed maintenance and repairs on the main clubhouse including painting, plaster repairs, sheetrock, lock repairs, window and door repairs, furniture repairs, and all general maintenance work (excluding electric and plumbing repairs). Early on Mondays he would remove golf cars from storage for the players' use. At the end of the day he would return the golf cars to storage. In addition, he washed and maintained the approximately golf cars used by the Club.

## INTERROGATORY NO. 2.

Please state and itemize, on a work week-by-work week basis, the alleged amount of unpaid

wages or other recovery (e.g., overtime wages, spread of hours pay, liquidated damages, etc.)

that Plaintiff seeks in this action and describe in detail the factual basis supporting each such

claim and method of computation used to determine that amount. In doing so, please state

separately, on a work week-by-work week basis, all time worked each day by Plaintiff while

employed by Defendant NCC and identify all documents that support Plaintiffs claims.


## ANSWER:

The plaintiff objects to this interrogatory on the basis that it is overbroad and burdensome.

Furthermore, the plaintiff hereby refers the defendant to the payroll records in its own

possession which defendant has a duty to keep and maintain under Federal Law and New York

State Law.


The plaintiff also refers the defendant to <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680

(1946) and its progeny, which recognize the employer's duty to keep records, and allow an

employee to carry his burden "if he proves that he has in fact performed work for which he was

improperly compensated and if he produces sufficient evidence to show the amount and extent

of that work as a matter of just and reasonable inference. The burden then shifts to the

employer to come forward with evidence of the precise amount of work performed or with

evidence to negative the reasonableness of the inference to be drawn from the employee's

evidence. If the employer fails to produce such evidence, the court may then award damages to

the employee, even though the result be only approximate.   The employer cannot be heard to

complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of 11(c) of the Act." Id, at 688, 689.

Pursuant to Rule 33(d), the plaintiff directs the defendant to its own payroll records. The plaintiff furthermore refers the plaintiff to payroll records in the plaintiff's possession which were previously exchanged on May 31, 201.

The plaintiff intends on proving at trial that he and other employees similarly situated were provided with housing on the third floor of the main Clubhouse. The plaintiff will also show that employees who were provided with housing (on-site employees) were paid substantially less than employees of the Club who were not provided with housing (off-site employees), and that housing was intended as part of the on-site employees' overall compensation package. The plaintiff will also show that the fair value of housing and meals provided to employees was not included in the regular rate of pay for the purpose of calculating the overtime rate.

The fair value of the housing and meals will be established by expert testimony, and circumstantial and direct evidence. However, the precise amount cannot be stated at the present time.

The plaintiff will also show that he and others similarly situated were deprived of overtime by the Club in that overtime was paid at the regular rate of pay rather than 1 ½ times the regular rate of pay as required by the Fair Labor Standards Act.

C:\Users\Steven John Moser\Desktop\Client Files\Moreno, Raul\response to interrogatories.docx

The plaintiff will also show that the Club did not keep records of hours worked by the plaintiff Raul Moreno on Mondays, and that Raul Moreno was paid $100 each Monday on which he worked, regardless of the number of hours worked.  It is the plaintiff's contention that all hours worked on Mondays will be established by the "just and reasonable inference" standard.

The plaintiff will also show that he and other employees similarly situated were not paid the spread of hours premium as required by New York State Law.

## INTERROGATORY NO. 3.

For the six year period preceding filing of this lawsuit, please state each and every day when

Plaintiff was absent from work for all or part of a workday and for any reason for such absence,

including, but not limited to, holidays, vacation, illness, personal reasons or otherwise, and

identify each and every document which Plaintiff contends provides such information.

## ANSWER

Defendant objects to the interrogatory on the grounds that it is excessive in scope, overly broad,

and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving

and subject to said objections, the plaintiff directs the defendant, pursuant to Rule 33(d), to the

payroll, and wage and hour records in the possession of the defendant.

## INTERROGATORY NO. 4.

If Plaintiff has ever been involved in any civil or criminal proceeding (bankruptcy, debtor-creditor, worker's compensation, matrimonial and all other claims by anyone included), either as a claimant, respondent, defendant, plaintiff or other party, state the date and place of each such action, including the name of the court and parties involved; the court docket number of all such actions; the names of attorneys representing each party; a description of the nature of each such action, including the disposition of each such action; whether or not there was an appeal, and, if so, the result thereof including the name and citation of each case reported; and, the amount of any settlement or judgment obtained in each such case. Identify each and every document which reflects or relates to the information requested in this Interrogatory.

## ANSWER

Defendant objects to the interrogatory on the grounds that it is excessive in scope, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving and subject to said objections, the plaintiff responds as follows:  NONE.

## INTERROGATORY NO. 5.

Identify all individuals who were consulted as to or who assisted in answering these

Interrogatories.

## ANSWER

The plaintiff's attorney, Steven John Moser and the plaintiff Raul Moreno prepared these

interrogatories.

## INTERROGATORY NO. 6.

Please identify Plaintiff's places of residence, both at Defendant NCC and elsewhere (including, but not limited to, temporary residences), since January 1, 2000, and identify who lived with Plaintiff at each such address and when Plaintiff (and they) resided at such address and all documents relating thereto for the period January 1, 2000 to date.

## ANSWER

Defendant objects to the interrogatory on the grounds that it is excessive in scope, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving and subject to said objections, the plaintiff responds as follows:

| Time Period | Residence | Persons With Whom Resided |
| --- | --- | --- |
| 2001-2010 | Nassau Country Club 20 30 St. Andrews Lane Glen Cove, NY  11542 | Fellow Employees of the Club Including Sergio Plauhe |

## INTERROGATORY NO. 7.

Please identify all employers of Plaintiff since January 1, 1991.

## ANSWER

Defendant objects to the interrogatory on the grounds that it is excessive in scope, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving and subject to said objections, the plaintiff responds as follows:

Nassau Country Club
30 St. Andrews Lane
Glen Cove, New York  11542

Glen Head Country Club
240 Glen Cove Road
Glen Head, NY  11545

Raul Moreno (Self-Employment growing and selling avocados)
Calle Rio Grande 6
Uruapa, Michoacan
Mexico

## INTERROGATORY NO. 8

Please confirm that Plaintiff truthfully and completely recorded all hours of work in the official time records of Defendant NCC (and, if not, please state each and every instance of unrecorded work time and identify documents that confirm such time).

## ANSWER

It is alleged that the defendant did not truthfully and completely record all hours worked by the plaintiff, particularly on Mondays, when he was instructed not to "punch in."

Plaintiff further objects to this request, as "it is the employer who has the duty under 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946).

Plaintiff reserves the right to answer this interrogatory once presented with the "official time records" identified in the interrogatory. Without waiving and subject to said objections, the plaintiff responds that he has to the best of his ability made an honest effort, pursuant to the instructions of the employer, to record hours worked.

## INTERROGATORY NO. 9.

Please identify who, at any time and in behalf of, Defendant NCC, spoke with Plaintiff about his compensation; eligibility for overtime pay; lodging on or off NCC premises; access to meals at Defendant NCC; or, any similar subject.

## ANSWER

Plaintiff presently recalls the names of the following individuals:

Francis Keefe, General Manager

James Coffey, Assistant General Manager

Thomas Sperandeo, General Manager

Eric McGrady (Phonetic)

Angie Genova

Plaintiff reserves the right to amend this response.

## INTERROGATORY NO. 10.

Please state whether Plaintiff maintained immigration status that enabled him to be employed by Defendant NCC throughout his employment and describe the nature of that documented work status.

## ANSWER

Plaintiff objects to the request, as the plaintiff's immigration status is not relevant to FLSA claims, and plaintiff is otherwise entitled to a protective order.  See Uto v. Job Site Services, Inc., 269 F.R.D. 209 (E.D.N.Y. 2010); Flores v. Amigon, 233 F.Supp.2d 462 (E.D.N.Y.2002); Liu v. Donna Karan Int'l, Inc., 207 F.Supp.2d 191 (S.D.N.Y.2002); Rengifo v. Erevos Enter., Inc., No. 06 Civ. 4266, 2007 WL 894376 (S.D.N.Y. Mar. 20, 2007);  Avila–Blum v. Casa de Cambio Delgado, 236 F.R.D. 190 (S.D.N.Y.2006);

## INTERROGATORY NO. 11.

Please state each and every fact that Plaintiff contends establishes that claims alleged against Defendant Coffey.

## ANSWER

The defendant Jim Coffey is the plaintiff's "employer."   Jim Coffey is the Assistant General Manager of the Club.  He has the authority to hire and fire employees, and more specifically the plaintiff Raul Moreno and other members of the class.  He was authorized to determine the rate of pay of Raul Moreno and the class, and had the authority to direct the activities of these employees.  He had the authority to determine the work hours of Raul Moreno and the class. He had the authority to set the work schedule of Raul Moreno and class members.

Dated:        Glen Cove, New York
               August 30, 2011

                                       Respectfully submitted,

                                       Steven John Moser
                                       STEVEN J. MOSER, P.C.
                                     *Attorneys for Plaintiff*
                                     1 School Street, Suite 303
                                     Glen Cove, New York  11542
                                     Tel:  516-671-1150
                                     Fax:  516-882-5420
                                     sjm@stevenjmoser.com

TO:     Noel Tripp, Esq.
         JACKSON LEWIS LLP
         *ATTORNEYS FOR DEFENDANTS*
         58 South Service Road, Suite 410
         Melville, New York  11747
         (631) 247-0404
         trippn@jacksonlewis.com

# EXHIBIT G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Long Island Federal Courthouse
814 Federal Plaza
Central Islip, NY 11722-4451
(631) 712-5730

BEFORE:      ARLENE R. LINDSAY               DATE: 11/10/2011
            United States Magistrate Judge
                                            TIME: 1:30 p.m.

DOCKET NO: CV 11-436 (JS)

CASE: Moreno v. Nassau County Country Club

____   INITIAL CONFERENCE
____   STATUS CONFERENCE              BY TELEPHONE X
____   SETTLEMENT CONFERENCE
____   FINAL CONFERENCE  ORDER


        APPEARANCES:        FOR PLAINTIFF:         FOR DEFENDANT:
                            Steven Moser           Noel Tripp


The following rulings were made:
        Counsel agreed to a four month stay of discovery.  If the parties would like to pursue
mediation, they are to advise the court in writing upon agreement.  The next conference is
scheduled for Thursday, March 8, 2012 at 11:30 a.m. by telephone.  Counsel for the plaintiff is
directed to initiate the call and once all parties are on the line contact chambers at (631) 712-5730.


                        SO ORDERED:
                        _____/s/_____

# EXHIBIT H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAUL MORENO,                    . Civil No. 11-CV-00436-JS-ARL
                                .
          Vs.                   .
                                . 824 Federal Plaza
                                . Central Islip, NY
NASSAU COUNTRY CLUB, et als.,   .
                                . November 10, 2011
. . . . . . . . . . . . . .

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE HONORABLE ARLENE R. LINDSAY,
UNITED STATES DISTRICT MAGISTRATE

APPEARANCES:

For The Plaintiff:          By:  STEVEN JOHN MOSER, ESQ.
                            1 School Street
                            Suite 303
                            Glen Cove, NY   11542


For The Defendant:          JACKSON LEWIS LLP
                            By:  NOEL P. TRIPP, ESQ.
                            58 South Service Road Suite 410
                            Melville, NY   11747




Proceedings recorded by electronic sound recording, transcript
          produced by transcription service.

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ   07750**
**800 603-6212**
**(732) 263-0044     Fax No. 732-263-0075**
www.tgribbentranscription.com

Colloquy                                                           2

1       THE COURT: Yes, I just wanted to essentially hold

2   this conference because I know plaintiff was asking for more,

3   plaintiff's counsel was asking for more time but this whole

4   process is fairly unfamiliar to me about some of this process

5   or procedure for bringing in somebody from out of the country

6   for a case so I'm trying to understand how long this case, how

7   certain is it. Hello?

8       MR. MOSER: As you probably know from my former

9   letter, I was, during my last year of law school, I was

10  employed by the US Immigration Service. Of course they have

11  changed the name of it but it's essentially the same

12  Government agency.

13      THE COURT: Sir, I do have some familiarity with this

14  so.

15      MR. MOSER: Although I don't practice in this area, I

16  have spoken with other counsel with regard to this and it's

17  60-90 days from the date of submission of the application. I

18  actually could not find a financial sponsor and my father

19  actually will be sponsoring me because he couldn't find a

20  financial sponsor among any of his friends that had sufficient

21  income to guarantee that financial sponsorship.

22      THE COURT: What does the financial sponsor

23  guarantee?

24      MR. MOSER: They guarantee that you won't become a

25  public charge and they have to show that the sponsor has

Colloquy                                    8

1           THE COURT:  It's going to be very, you know, it's

2    going to be awkward and very difficult and I imagine it's going

3    to take two days because I mean, again, I don't know what kind

4    of volume of documents are involved, but it is no question, it

5    doubles and triples the amount of effort that goes into it.  So

6    why undertake that until we even know whether or not this

7    individual is going to be permitted to come into this country

8    to prosecute this action.

9           So I would suggest and again I do have to have some

10   concern for the defendant's interest here as well, you know.

11   They do have an action pending against them.  So we can't let

12   this go on indefinitely.  But I certainly think it's

13   appropriate to wait, you know, let's just hold off.  Give it a

14   four month window and see where we are and if after the four

15   months if we don't have any better feel for this, then I may

16   have to take a different course.  Or if after four months we

17   know it's not going to happen, then that will resolve itself.

18   I don't have a better suggestion than that, unless counsel has

19   some other idea.

20          MR. MOSER:  You know, I don't have a better idea than

21   that, Judge.  Again any delay as the defendants aren't actively

22   engaged in discovery at this point, any delay doesn't

23   necessarily prejudice the defendant.  In fact, you know, the

24   statute is not tolled for the FLSA class members until they

25   effectively submit a consent to joint or opt in if it's a Rule

Colloquy                                    9

1  23 class so I don't, you know, respectfully, I think it's the

2  more time passes, it's probably better for the defendant.

3          THE COURT:  Well, how does the defendant feel about

4  that?  I mean, do you --

5          MR. TRIPP:  The defendants don't feel that way for a

6  number of reasons, Your Honor.  Obviously the action is

7  pending.  We have not engaged in active discovery so the costs

8  aren't huge but the case is ongoing.  There are two, I believe

9  two, at least one individual who is individually named, the

10 punitive employer is not someone's, you know, --

11         THE COURT:  You know, I understand that the fact that

12 there's a pending action provides its own prejudice.  But the

13 real question is, do you object, and I'm addressing defense

14 counsel, to the postponement of this matter, not the

15 postponement but basically the postponement of any deposition

16 the plaintiff for the four month window and basically put it

17 over, not conduct any discovery during that four month period

18 because ultimately until you know that you've got a viable

19 plaintiff, I don't know that anybody should be spending money

20 right now.

21         MR. TRIPP:  Right.  You know, four months seems like

22 a long time but by the same token, given the process that we're

23 talking about it seems like a reasonable, even close to a

24 reasonable minimum to test the other process.

25         MR. MOSER:  (inaudible)

Colloquy                    13

1  of trying to get the plaintiff in.  I don't want to put that on

2  hold because you don't know if you'll settle.  And we'll be

3  accomplishing something during this four month hiatus, okay?

4           MR. MOSER:  What date were you going to set it over

5  to?

6           THE COURT:  I don't have a calendar in front of me.

7  I just figured it would be four months and we would put it on

8  for a telephone status, so I think that's the best that I can

9  do.  And certainly, let me just add this.  If the plaintiff

10 learns something that's pertinent to this question before then,

11 he should in a letter communicate with the Court and let me

12 know that things have accelerated or they've fallen apart,

13 whatever it is, okay?

14          MR. MOSER:  Okay.

15          THE COURT:  So I'll send you through ECF a

16 notification.  Obviously, I'm going to pick it for a telephone

17 conference again and we'll see where we are.  And if the date

18 that I pick and time I pick is problematic, just give me a

19 shout out and we can make an adjustment, okay?

20          MR. MOSER:  Thank you, Your Honor.

21          THE COURT:  Okay, talk to you soon.  If I don't speak

22 to you before the holiday, --

23          MR. TRIPP:  Thank you, Your Honor.

24          THE COURT:  -- have a nice Thanksgiving.

25                          *  *  *  *  *

14

1                     **C E R T I F I C A T I O N**

2          I, Tracy Gribben, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    digital audio recording of the proceedings in the

5    above-entitled matter.

6

7    _____

8    TRACY GRIBBEN

9    TERRY GRIBBEN'S TRANSCRIPTION SERVICE DATE: **November 15, 2012**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Long Island Federal Courthouse
814 Federal Plaza
Central Islip, NY 11722-4451
(631) 712-5730

BEFORE:     ARLENE R. LINDSAY          DATE: 3/8/2012
            United States Magistrate Judge
                                       TIME: 12:30 p.m.

DOCKET NO: CV 11-436 (JS)


CASE: Moreno v. Nassau Country Club


\_\_\_ INITIAL CONFERENCE
\_X\_ STATUS CONFERENCE                 BY TELEPHONE\_\_\_
\_\_\_ SETTLEMENT CONFERENCE
\_\_\_ FINAL CONFERENCE  ORDER


        APPEARANCES:        FOR PLAINTIFF:        FOR DEFENDANTS:
                            Steven Moser          Noel Tripp


The following rulings were made:
        On consent, the parties agree to dismissal of the case without prejudice.


                        SO ORDERED:

                        _____/s/_____

# EXHIBIT J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X
Raul Moreno, et al.

         -V-

Nassau Country Club
Jim Coffey
-----------------------------------------------------X

ORDER OF DISCONTINUANCE
CV 11- 436 (JS)(ARL)

Appearances:

For the Plaintiff(s):
Steven Moser, Esq.
1 School St.   #303
Glen Cove  NY 11542

For the Defendant(s):
Noel Tripp, Esq.
Paul Siegel, Esq.
Jackson Lewis
58 South Service Rd.    #410
Melville  NY 11747

SEYBERT, District Judge:

      The above-captioned case was filed on Jan. 28, 2011.

      On Mar. 8, 2012, the parties appeared before Magistrate Judge Arlene Rosario Lindsay for a status conference (docket entry [18]). At that time, there was consent to dismissal of the case without prejudice.

      IT IS HEREBY ORDERED that this action is discontinued without prejudice. The Clerk of Court is directed to mark the case closed and terminate Motion [14].

      SO ORDERED.

Dated: Apr.  9  , 2012
      Central Islip  NY

                  /s/  JOANNA SEYBERT
                JOANNA SEYBERT, U.S.D.J.